The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning. This is the first case of the day. It's case number 4-24-0827, People v. Bonnette. Counsel, let's start with appearances for the appellant. Douglas Johnson for Mr. Bonnette, the appellant. Okay, thank you. And for the appellee? Timothy J. Londrigan, Office of the State's Attorney's Appellate Prosecutor's Office. Thank you. Mr. Johnson, you may proceed with your argument. Thank you. Good morning, Justices, and may it please the Court, my name is Doug Johnson and I represent the appellant, Mr. Bonnette. This case presents the issue of whether or not the evidence was sufficient upon which to base Mr. Bonnette's conviction. I understand that when I'm arguing sufficiency of evidence at this higher court, it is quite a challenge and a high bar. But I think this case is right and appropriate to vacate his conviction because unlike many other cases, there is not simply enough here. Other child pornography cases, there is simply not enough here. I understand the court pays great deference, does not make a de novo review here. I have to convince you that the evidence was unsatisfactory, improbable, unreasonable. And why I think our position is the appropriate position is because I'm not asking you to reverse credibility findings or find that the court got it wrong in making credibility findings. I think this case takes a turn on what precisely the state's witnesses testified to a very close review, especially of expert Lashore, the digital forensics expert presented by the state. There was no expert presented by the defense, but Mr. Lashore was candid and I believe he testified as best he could and truthfully to what he could say and what he could not say with regard to this case that was so heavily relied on technology. The first point of law I'd like to make clear is that as stated by the Ninth Circuit in Kaczynski and adopted in Josephitis, the mere presence of a child, a pornographic image, child, illegal child pornography, the mere presence in a cash file is not sufficient to establish possession. And be it the single charged image in this case or the other dozen or so images from the prior incidents, I'm sorry, there may have been 100 or 200 and then they were weeded down, but every single image was in the cash file. None were. Good morning. When we're talking about presence in a cash file, we had more than that here though, did we not? We had the image initially and also in the gallery app or application and it was opened on March 6th and there was evidence that the defendant opened it on March 6th. He accessed it by enlarging it to a full screen view. So the trial court, because of that enlargement, I think, wasn't the trial court justified then in finding that accessing and enlarging this cash image that was stored in the defendant's photo gallery did constitute actual possession? And if not, why not? I believe the trial court was not justified because I believe what that shows is that the image in a like most favorable to the state, which of course is how we have to look at it, that shows that a user, and we can assume it was Mr. Bonat in a like most favorable state, clicked on the image. But viewing, viewing does not equal possession under the law because that image was not found outside the cash file later and we don't know how long that image was viewed, if at all. And the state, Mr. Leshurr, admitted that on page 195 of the record and the state at the directed verdict stage admitted we don't know when that was deleted. And so if the law is that the state has the burden of proving the defendants viewed that image longer than necessary to terminate possession, which I believe is the law, on this record we don't know, both by Leshurr's admission and the state's admission at the directed verdict stage. What about the additional images that were offered for propensity? Yes, the image for propensity and for the prior bad acts for intent motivation and observation motive and absence of mistake, every single one of them was in the cash file. So again, I think the reason that we don't convict people based on presence in the cash file is because computers, A, do things an expert could never testify long enough to tell us, in a criminal case, to tell us everything a computer is doing or not doing. But more specifically in this case, uh, we know, we don't know how the images got there and they could have gotten, there's hacking, there's malware, there's all those things that could result in these type of illegal images getting into the cash file without Mr. Bonet knowing. And we can't convict him unless we can show something more. And there are many ways the state could do that, but they didn't do it here. They did not show... Excuse me. But the number of cashed images, I think is significant, is it not? And certainly strongly suggests that this defendant knowingly and voluntarily sought out the material of this nature. In addition, we have the program eraser that the software, eraser software that were on his devices. So with all of that, it seems that the trial court certainly could have reasonably inferred that the defendant repeatedly accessed child pornography and then attempted to delete the files with both of these additional pieces of evidence that we have in this case. I think starting with the eraser program, uh, I think the expert admitted there can, and I think common sense users can have eraser programs on their computer and it can be completely innocent. And what we don't have here is an expert saying, okay, I look at this charged image and this eraser program was utilized to delete this charged image on this date. We don't have that here. We have the presence of an eraser program and we have an expert who couldn't find the images when he looked for them. And I'd like to point out another thing the expert said, when we talk about, you mentioned the number of images, uh, there are a lot, but again, hacking malware, that type of thing, I don't see anything in this record that says, well, that can't happen more than once. So those could have appeared, uh, those could have appeared through whatever unknowingly, we don't know. And the expert said, as far as how the cache images get created, he did not say that the only possible way this cache image could be created is through clicking on it. He said, that is typically how it happens. So that leaves out if he said, and that's on page, I don't have the page right in front of me, but if that is, can we convict someone based on, uh, what typically happens. And he also said with regard to these deletions, we're talking about, we're assuming Mr. Bonet deleted it. Mr. LeSure said on 195, I implied the original charged photo was deleted because I could not find it. And so we're, well, he implied. So I think there are other ways that things could happen that we don't know on this record. So what we look for is something like a search, search terms. Where are the terms such as, I want to, I want child pornography, show me child pornography, things like that. There is no browsing history. But circumstantially, the, the trial court had all of this additional evidence that we've been talking about. They, they had an erasure program that wasn't, uh, that wasn't shown to have been present. Well, all right. I think certainly you've, you've made your point counsel. If you would permit, um, uh, I would like to be sure that we also address another issue. And certainly if you want to come back to sufficiency of the evidence, I believe we would have time, but I'd like to also address with you, um, the issue of whether or not the original indictment was fatally defective and how we, um, look at this, uh, focusing really on what the standard is first. Um, you contend that the standard for determining whether or not the bill of indictment, um, met the requirements and was sufficient under one 11 dash three, a, that a strict standard would be required versus a liberal standard. And that's because you contend that that issue was not raised for the first time on appeal, but it was never raised pre-trial, was it counsel? It was only, I'm sorry, let me, I'll, I'll let you answer the question. It was never raised pre-trial. Uh, it was not raised pre-trial because the case proceeded, but the moment the indictment was amended. So the, so the defense had no reason to object to the indictment prior to the trial, but the, but when the state sought to amend the indictment and this, the defense did object and even said there may be the stats referenced the statute of limitations. Well, there was an objection raised, but no contention that the bill of indictment was not sufficient. There was an objection raised and he did not specifically, uh, specifically detail the argument I've presented on appeal, but he did in the, in the heat of trial, he did say state, I object there may be, or there, there could be, I don't think he said there is, I'd like to say he said there is, but I think he said there could be a statute of limitations issue. And I object. Well, counsel, was there, oh, I'm sorry, just go ahead. No, no, go ahead. Just, well, I was just going to ask, was there, uh, a, uh, statute of limitations, uh, defense, uh, of record in this case? Uh, the, the, the most that was said was the pay at the, when the, uh, state sought to leave to amend, and then there was some talk back and forth about it. The defense ultimately objected saying, judge, we do object. There may be a stat statute of limitations, uh, issue. Well, was there a, I'm sorry, counsel, was there a notice given prior to trial of, uh, an affirmative defense of, uh, statute of limitations? I do not believe so, your honor. Is that a problem? I believe, I believe it isn't because the, uh, the indictment was missed, you know, they, he proceeded, the defense proceeded, and of course the file referenced, the proof would be on that, if any, that the defendants clicked on it on March 2nd. The state did not have to put the file, or the state could argue, we didn't have to put the file name on the indictment, we could have just put the date, but they put the file name and referenced the March 2nd image, and therefore that misled the defense, but then the defense could proceed to trial, didn't want to object, could proceed to trial, and then make the argument at the directed verdict stage, if the amendment had not been, I'm sorry, if the indictment had not been amended, the defense could have proceeded and said, well, look, all they proved is that the defendant clicked on this image on March 2nd, and that's a date outside the statute of limitations, and therefore we have a complete defense, but with the amendment, that defense evaporated, and so I, that's why our argument that it was not waived, this argument was not waived, because the defense could have proceeded and prevailed at the directed verdict stage, if the amendment had not been allowed. Counselor, isn't it, isn't it correct that the dates that the state used throughout the trial, including the indictment, was always March 6th, and not March 2nd? Yes, that's what I probably didn't, let me try, the date is March 6th on the original indictment. The problem I submitted for the state is that the file folder referenced is an image of March 2nd, so the defense could have proceeded thinking, well, all they're going to prove is that this file was clicked on and viewed on March 2nd, so when I get to the close of their evidence, I can argue, okay, state, you've proved only that you haven't proved that the image was accessed later, you haven't proven that he searched for it, you haven't proven that he downloaded, you haven't proven where he got it, where it came from, a website, BitTorrent, whatever, you haven't proven any of that, all you've shown is a clicking on on March 2nd, and that, even if the court, the trial court had accepted that he possessed it on March 2nd, the defense had a complete, the defendant had a complete defense to that indictment, because he was misled by the file name that showed it was viewed on March 2nd, but that defense was taken away just before the last witness testified. Yes, but it was already possessed, it was also possessed on March 6th, the date that it was enlarged from the gallery, that was the charge, that was the image, and there was notice, obviously, from the bill of indictment, that that was the date that it was enlarged and viewed, and therefore possessed, was it not? And that gets back to what I was saying, viewing, I believe under the law, is absolutely not sufficient for possession, because viewing all that was proven, if that is accepted, say it was clicked on on March 6th, that's not sufficient for possession, because the state must prove, through Gamilla, Scalero, Josephitis, the state must prove that the defendant viewed that photograph, even if he clicked on it, assuming he clicked on it, still has to prove that he clicked on it longer than necessary to terminate possession. In other words, I'm on my computer, and something horrible comes up, and I click it, and I get rid of it, and the state's expert here admitted, I cannot tell you how long, it was deleted sometime, I believe, since I couldn't find them, over this month and a half or two month period, I can't tell you though when it was deleted, which leaves open, okay, then we should not just assume his guilt, when the state expert has admitted, I can't tell you how long it was viewed, or when it was deleted. On whatever date, is that correct? Are you saying whether it's March 2nd or March 6th? Correct. I'm not following your argument, go ahead. As to the amendment, what I'm saying is that, because the original indictment showed a charged image that was viewed according to the state on March 2nd, even if the state could have proven that that was viewed longer than necessary to terminate possession, it still would not, there still was a defense, but that defense was gone when the amendment, when the indictment was amended to March 6th. But that, but no, the, it wasn't amended to March 6th at least as I read the record. The name, just like the name of a victim, was changed, modified, but the image was the same image as I read the record and look at the evidence. It was not a different image that was viewed. Yes, I, it was both dates set forth on the indictments are March 6th and the image is the same. I agree to that. What the difference in indictments was the file name. And if a defense counsel looked at the file name and then saw what that meant digitally, the defense could have said, oh, well, they're going to be able to show this was viewed on March 2nd. They may be able to show this was clicked on, on March 2nd and viewed at that time. But even if they can, I can say, no, that's outside the term. Because again, viewing is not possession, uh, under the law as I understand it. Counselor, you may proceed with your argument. Okay. Uh, and that's why I think we talk, there's a lot of talk in this record about Lolly and Lolita. And the one point that was made is, of course, we all know those can be innocent, innocent usages, or they can be associated with child pornography, but let's just assume that's true. These are not search terms. I think that's of crucial importance. Lolly and Lolita, there is no proof, no browsing history that the defendant searched and use the terms Lolly and Lolita. These are file names. So in a light, most favorable to the state, we can assume the defendant named files, Lolly and Lolita based on what was found when his computer was analyzed. But our, I submitted, we went out and did a random sample of people's computers. We would find far more offensive file names from people that are completely innocent of any, of any wrongdoing. So the terms, Lolly and Lolita are not search terms and should not be any evidence of criminal behavior or considered. Going back to, I'm sorry, Justice Vancell, go ahead. Well, using the fact that he named the files, doesn't that go contrary to your argument that these were just cash files? Well, there was nothing found, there was nothing found in the Lolly and Lolita folders. So nothing, you know, if those folders contained child pornography, I would agree with you, but what we just have different things thrown against this wall in the sea of technology. But if it's real, if it's analyzed totally, what we have is the very real possibility that somehow, some way these images got infected those computers at different times. And he had an innocently had an eraser program, but we never see that he erased things just that were gone. We have an expert saying, I don't know if he even, not only did the experts say, I don't know if he accessed these, the expert said, I don't know if he knew how to access these. I don't know if he did. And in fact, I can't even tell you if anyone could have accessed these cash files. So I have one last question, counsel, at this point, if we look at the difference between a formal and a substantive amendment, the differences, whether the change alters the nature and the elements of the offense charged here, what was done is correcting the file name, as was alluded to earlier, that didn't alter the nature and elements of this child pornography charge, did it? I believe it did alter it going back to the fact that the state put a folder on there dated March 2nd, and the defense could have a defense to that. I submit the defense, the defendant had a defense to the March 2nd case. He could prove even if I viewed and possessed it on March 2nd, that's outside the statute of limitations and you can't prove any other time. I think an important point is the state may have been, maybe didn't have to name the folder or present it on the indictment, but it did. And that misled the defendant. And that's why the amendment misled the defendant. The defendant had a defense that evaporated. Thank you. Are there any other questions from the panel? Not at this time. All right, Mr. Johnson, you'll have time in rebuttal. Mr. Londrian. Thank you, your honors. May it please the court. I really don't have a great deal to offer in addition to my brief. You know, I'm happy to address any concern that the court may have, but I don't want to unnecessarily take up your time repeating what has already been stated. You know, is there something that I can help the court with? I think from the questions posed to opposing counsel, I think you clearly understand the issues. So wasn't there some degree of surprise or prejudice to the defense after four of the state's five witnesses testified, the prosecutors sought to amend the name of the file. Didn't that mislead defense counsel here and our defense counsel at trial and lead them to think that this file was not within the file that was alleged originally was not within the statute of limitations. And therefore, when it was amended and changed, it took that defense away. How do you respond to that? I don't think they were surprised at all, judge. I think as you pointed out, this is not an essential element of the offense. The state was not required to put or identify which file number they were making reference to. This particular picture was present in multiple files, and the state just simply erred in making reference to a file that was what image he is being charged with possessing. And he may have, if you want to give him the benefit of the doubt, perhaps he was hoping the state would limit its evidence purely to that specific file number, allowing him the possible defense of statute of limitations at the close of the state's case. But that's not what the state did. The state recognized the error in their about to present. So the critical question is, was the state going to present evidence that only that particular file viewed on March 2nd was viewed actually possessed by the defendant? And the answer is clearly no. The evidence that the state actually presented at the trial was that there was a file, multiple files, but specifically a file that the defendant viewed on March 6th. And so there is sufficient evidence that the statute of limitations has no application. You know, so look at the evidence that was actually submitted by the state, and you'll see that the amendment simply conformed to the evidence. I have a question that relates to the timing of the challenge to the amendment. There's a different standard in terms of judging the indictment based on when the challenge is made, whether done via pretrial motion versus in the appellate court for the first time. Here, there was an objection to the request to amend made, but there was no pretrial motion, obviously, here. Is an objecting to request to amend the equivalent of a challenge to the amendment such that it would then need to, the indictment would have to strictly comply with the requirements of the statute? If I'm following the court's question. Well, let me, can I back up? When was defendant's first opportunity to challenge the amendment? Well, probably there at trial. However, the question is not when was his first, well, I believe the more important question that the court should entertain is when was the first time the defendant had an opportunity to challenge the indictment? That is determinative of whether or not this issue is first brought at trial or first brought on appeal. So he had plenty of time in which to challenge the indictment if he thought it was faulty. He could have filed a motion at any time prior to trial, alleging the statute of limitations as a defense, claiming that what he's being charged with was outside that statute of limitations. Obviously, the defendant did not. Now, perhaps the defendant giving him some credit was sitting in the weeds, hoping that the state would ignorantly restrict its evidence only to that specific file that they did make reference to in their indictment. And having done that, that may have opened the door to a potential statute of limitations defense that the defendant hoped to raise. However, that was not what actually took place. The state recognized its grammatical error and changed it to comport with the evidence the state actually presented at trial, which was that the file number referencing the March 6th viewing and or possession was the one that the state was going to go forward with. That did not and should not have surprised the defendant. He had multiple copies of this particular image presented through discovery. He knew what was coming. And the fact that he objected to it, I think just clarifies that he understood exactly what the issue was. And he was hoping that the state would mistakenly draw its attention only to that earlier viewing, only to that cash or file number that they'd made reference to in the indictment, mistakenly. But he was hoping that that was what they might do, and thereby open a potential statute of limitations issue. That was not actually done. So the fact that he hoped things might fall his way through some confusion and mistake doesn't open and doesn't suggest that he actually challenged the indictment prior to trial or even during trial with his objection. So would our conclusion or a conclusion that the bill of indictment was sufficient only depend on we applied the liberal approach to the analysis as opposed to the strict approach, or would the result be the same, whichever standard we used, counsel? I think the standard would be, I mean, the result would be the same, Your Honor. Why? Because I think even strictly speaking, this is a formal defect. You can go under subsection A and call it a misspelling. You can call it under subsection D and call it an unnecessary element of the offense. Either it follows under the statute as a formal defect. However, I do think the appropriate standard is whether this has been brought for the first time on appeal, which clearly it has. There's been no challenge to the indictment at any time. Even now on appeal, they don't challenge the indictment. They simply are disappointed they didn't have their statute of limitations defense. Anything further from anybody? Okay. Thank you, Your Honors. Stay right. Thank you, Mr. Londrigan. Mr. Johnson, rebuttal. Thank you. Briefly, addressing those points, I believe that the strict compliance standard applies because the defendant objected at the first possible moment he needed to. And I think he was surprised, and note that he objected not just a general objection, he referenced the statute of limitations. Mr. Londrigan indicated that that doesn't constitute, though, a challenge to the response. It is a challenge to the motion to amend should not have been granted. I think it's just a matter of the terms. And I think the idea is you can't challenge an indictment for the first time on appeal because that's just trying to take two bites at the apple. You could look and say, oh, this indictment is faulty. I'll wait and see on appeal. But that is clearly not what happened here. He objected on statute of limitations grounds, and he could maybe they'll prove I viewed this image on March 6th, but they're not going to be able to show I possessed it. Maybe they'll show I viewed and possessed it on March 2nd, but then I have a defense. And that's the reason we raised that issue is in the state, obviously amended for a reason. If they didn't have to do that to take away that defense, they wouldn't have to. They did it for a reason in the heat of battle. And so strict compliance, uh, they, they should strictly comply. And the first indictment was misleading because while it had the date of March 6th, if you look at that file name, the defense could have felt they had a defense to possession on March 2nd. I'm still on that point. So at that time, pre-trial, there could have been a motion to dismiss the bill of indictment for failure to, um, allege possible possession within the statute of limitations, correct? If I'm following your argument that this, uh, file name referred, instead of what the indictment said, March 6th to a March 2nd viewing. But I would submit the defendant had to see how they had to see the evidence and what trial with that defense figuring I can defeat possession on March 2nd. So I'll proceed under this indictment and then argue this at the close of evidence. But then all of a sudden, in the last witness that just before the last witness, the state changed gears and that's the surprise that the defense suffered. What could have been out the ended by the motion to dismiss at the beginning prior to that, could it not? I guess that could have been one way for the defense to proceed. They could have done that, but I submit they also had the right to proceed based on what the charge was. And if the state sought to amend, then they should have gone back to the grand jury and said to the grand jury, we want to charge him with possession on March 6th of viewing this file. And then the last point I wanted to make goes back to what I started with. I think it's just so important to look at what Mr. LaSure testified to and the experts testified to in this case, because it is different. I think the state or the defense at trial struggled with the same thing I did. And when I go back to law school and my teachers told me, why are you showing me cases where this evidence was sufficient to tell me that your evidence was insufficient? Because the temptation here and what defense counsel at trial did was the same, because there is so much in Gamilla, Scalero, and Josephitis that showed possession, be it paying for websites, search terms, accessing files. It's present in all of those cases. It's not here. It's just in the cash file. And what LaSure said on page 203 of the record, it's telling. It is the only possible reference one could consider. And it's indicative of how the words sometimes are misleading in this case. And the question to LaSure was, Mr. Finnegan had indicated through his cross asking you about if you were aware in regards to search terms. Did you have any artifacts through the cell phone related to search terms? Answer, there was web activity present on the Galaxy Note 8 device associated with a child pornography keyword. And I submit, that is sort of gobbledygook, but there's nothing in this record that shows on this date, I see this defendant search these things. There's a lot of assumptions we have to make about what went on with that computer when we really don't know. And that's why I think it's a dangerous case to find this evidence sufficient to convict this man and have him register as a sex offender for the rest of his life. The cases counsel you, some of the cases you rely on were cases involving prosecutions based on child pornography that were found in these temporary internet files, that is files that were typically hidden and stored, I believe. Perhaps the concern in these types of prosecutions is that a person could encounter, as I think you alluded to earlier, child pornography inadvertently on the internet. However, I'm not sure that I see this concern in this case, as here this prosecution was based on an image that the defendant did click on and enlarged. So it wasn't just clicked on, it was enlarged in the gallery application of his phone. So given that defendant here was prosecuted on that basis, I'm not sure how the temporary, the TIFF files are really relevant to our analysis and why we should consider them. My answer to that would be that I think all we have on this record, there's nothing that says he went through any machinations to enlarge the photo, just that in a light most favorable state, he, Mr. Bonnett clicked on it, viewing though is not possession under the law and we don't, and that file was never found, the original was never found, these are all cache files that Mr. Leshurr admitted, this user, I have no evidence he knew this was going to be created, I have no, Leshurr said that, a user would not necessarily know and I have no evidence this user knew that this image would be created by clicking on the original image. And so this is simply, this is not like having this, these exhibits come in and we have to remember these weren't found in a drawer in his bedroom, these were created, we don't have the original one that he allegedly looked at, we have something created because he clicked and we don't know how long he looked at that picture and that's crucial in this case because he had to linger over it longer than to terminate possession. And I don't know, I just think that images can pop up, maybe not as much in the old days and can be improper and you can get rid of them and that's that, hacking, malware, whatever, that's why the law requires more than is present here. Thank you. Thank you. All right, thank you Mr. Johnson. Thank you both. The case will be taken under advisement and the court will issue a written decision.